UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

JUDY A. ELLIOTT )
 )
V. ) NO. 2:07-CV-152
 )
MICHAEL J. ASTRUE, )
Commissioner of Social Security )

REPORT AND RECOMMENDATION

This matter is before the United States Magistrate Judge under the standing orders of the Court for a report and recommendation with respect to the Motion for Judgment on the Pleadings [Doc. 11] of the plaintiff, and the Motion for Summary Judgment [Doc. 12] of the defendant Commissioner.

Plaintiff, who is seeking Disability Insurance Benefits, was 59 years of age at the time of her administrative hearing, having been born on November 13, 1947. She has past relevant work experience as a sewing machine operator (semi-skilled work requiring light exertion); an assembler (unskilled work requiring light exertion); a gasket cutter (unskilled work requiring light exertion); a water heater assembler (unskilled work requiring light exertion); and as a cook in a nursing home (skilled work requiring medium exertion). Plaintiff alleges that she became disabled on August 24, 2002, due to high blood pressure, knee problems, varicose veins, depression and nervousness

The sole function of this Court in making this review is to determine whether the findings of the Secretary are supported by substantial evidence in the record. *McCormick v. Secretary of Health & Human Services*, 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial evidence" is

defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury. *Consolo v. Federal Maritime Comm.*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues differently, the Secretary's decision must stand if supported by substantial evidence. *Listenbee v. Secretary of Health and Human Services*, 846 F.2d 345, 349 (6th Cir. 1988).

Plaintiff apparently filed an earlier application for benefits, and some of the documents in the administrative record date from that time. One is a consultative examination performed at the request of the Commissioner by Dr. Charlton Stanley, a licenced clinical psychologist, on December 11, 2001 [Tr. 235-40]. Dr. Stanley, following an examination, opined thus:

> This claimant appears to be capable of understanding extremely simple information but I am not sure that she can put it to use in a vocational setting. She has virtually no ability to comprehend and implement multi-step, complex instructions due to the fact that she has marked trouble focusing her attention. This claimant's ability to maintain persistence and concentration on tasks for a full work day and work week is virtually nil. This is due to her extreme depression and anxiety which causes poor concentration.
>
> Social relationships appear to be severely impaired. She has never been a sociable person, but since the death of her husband she apparently has completely withdrawn except from 2 or 3 family members.

[Tr. 240].

There was also a physical consultative examination performed on December 3, 2001, by Dr. Karl W. Konrad, also at the request of the Commissioner. Dr. Konrad found no impairment-

2

related physical limitations at that time. [Tr. 243].

That previous application was unsuccessful, and in 2005, plaintiff filed the present application.

On June 2, 2005, Art Stair, MA, LPE, a psychological examiner working with Dr. Charlton Stanley, performed a psychological exam at the behest of the Commissioner. After examination, he opined as follows:

> The claimant appears to be mostly capable of understanding simple information or directions with the ability to put it to full use in a vocational setting. The claimant's ability to comprehend and implement multi-step complex instructions is marginal given the claimant's possible dementia and estimated upper borderline intellectual functioning secondary to the dementia. The claimant's ability to maintain persistence and concentration on tasks for a full workday and workweek is at least moderately impaired given the claimant's major depression disorder, panic disorder with agoraphobia and possible dementia. The claimant's social relationships are moderately impaired as she reports limited contact with others aside from her daughter.

Mr. Stair also opined that the plaintiff could not handle her own finances. His diagnoses were major depressive disorder, recurrent, with occasional full entry episode recovery, moderate ;panic disorder with agoraphobia, mild; possible dementia of undetermined etiology; possible borderline intellectual functioning secondary to possible dementia; and a GAF estimated at 45. [Tr. 406]. This report was also signed by Dr. Charlton Stanley.

On July 14, 2005, plaintiff was examined again by Dr. Konrad [Tr. 426-28]. He thoroughly examined plaintiff. He noted 5/5 strength in her upper and lower extremities and no asymmetrical muscle wasting. He did note a limited range of motion of the right (dominant) shoulder. In his assessment, unlike the one he performed in 2001, he found impairment-related limitations. When assessing the amount of weight plaintiff could occasionally lift and carry he put "(?*)" for the amount. He opined that she could stand and walk and sit for at least six hours

3

each in a normal workday. His findings/diagnoses were a limited range of motion in the right shoulder, elevated blood pressure, and limited x-rays of the lumbar spine with normal x-rays. [Tr. 428].

In addition to these examining consultative sources, there were various opinions and assessments completed by non-examining state agency physicians and psychologists, which are described in the defendant Commissioner's brief [Doc. 13] at pages 7 and 8.

At the administrative hearing, the ALJ called Dr. Thomas E. Schacht as a psychological expert. Dr. Schacht basically points out what the various treating sources and Dr. Stanley and Mr. Stair did not do, and what they did not test for, although he did state that if the plaintiff did indeed have dementia "there could be impairments." [Tr. 36-43].

The ALJ also called Dr. Norman Hankins to testify a vocational expert. Dr. Hankins recounted the vocational characteristics of the plaintiff's past relevant work. The ALJ then asked whether there would be jobs if "Everything in Exhibit No. 21f is true and correct." Dr. Hankins stated that there would be jobs and that all of her past jobs could be performed by someone with that residual functional capacity. [Tr. 44]. Exhibit 21f is an assessment by a non-examining state agency physician found at Tr. 437, which opines that the plaintiff can perform almost the full range of medium work, except for a problem with reaching overhead due to her limited range of motion in her right shoulder, and using her right upper extremity more than "frequently."

When asked by the ALJ whether there would be jobs available to the plaintiff under Dr. Konrad's 2005 examination and assessment [Exhibit 18f] he stated "I don't know whether there would be jobs or not" because Dr. Konrad "had a question mark at lifting." [Tr. 44 and 45]. When asked by the ALJ if plaintiff could work if the limitations described in the 2005 report of

4

Dr. Stanley and Mr. Stair [Exhibit 16f] were "true and correct," Dr. Hankins stated "I don't think she'd be able to work based on 16f." [Tr. 45].

Plaintiff's counsel cross-examined Dr. Hankins. He admitted that the plaintiff would have to "constantly" use her right upper extremity in her past job as a sewing machine operator. He could not opine whether some of the other past jobs would require "constant" as opposed to "frequent" use of her dominant arm.

At this juncture, the ALJ was faced with problematical evaluations by both the mental health examiners and Dr. Konrad, which obviously caused concern on the part of Dr. Hankins. He could either have further evaluations done to deal with these doubts or proceed to adjudicate upon the record as it existed. He chose the latter course of action.

His hearing decision [Tr. 13-21] does not mention the 2005 evaluation by Dr. Stanley and Mr. Stair at all. With respect to Dr. Konrad's 2005 report, he stated "no limitations were given." [Tr. 16]. He instead relied upon the reports of the non-examining state agency physicians, the testimony of Dr. Schacht (which raised many questions but provided few if any answers), and the reports of non-examining state agency mental health evaluators, which he found to be "generally consistent" with the 2001 report of Dr. Stanley. With respect to that report, he stated that Dr. Stanley had opined that the plaintiff "was found to have no ability to sustain concentration and persist for a full workweek..." [Tr. 16]. He concluded that "[t]he claimant has the residual functional capacity for light work that is not precluded by the restrictions set forth by the state-agency medical consultants in Exhibit 12f..." which referred to the aforementioned mental health assessment which was "consistent" with Dr. Stanley's report. He thus found that the plaintiff could return to her past relevant work. [Tr. 21].

5

It was, at best, inaccurate to state that Dr. Konrad found "no limitations." Dr. Konrad's summary of the plaintiff's physical capacity begins with the words "[t]he patient has impairment related physical limitations..." [Tr. 428]. Dr. Hankins certainly did not interpret Dr. Konrad's evaluation as showing no limitations, and so testified when asked by the ALJ how he "interpreted" that report. Likewise, Dr. Hankins did not quibble about the 2005 report of Mr. Stair which Dr. Stanley approved as the supervising psychologist, stating that if that report was accurate, the plaintiff could do no work. Also, the statement that the non-examining state agency report was "generally consistent" with the 2001 report of Dr. Stanley, which found her ability to maintain persistence and concentration on tasks for a full work day and work week to be "virtually nil" is inaccurate.

Adjudicators of any sort are often faced with factual assertions which the fact finder has little or no confidence in. However, they are not free to totally disregard them, but must analyze and deal with them. The unhappy task of handling judicial reviews of Social Security decisions denying benefits is difficult even when all of the evidence is discussed in the hearing decision, but is compounded geometrically when inaccurate accounts of the evidence are set forth therein.

It seems to boil down to the simple fact that the two consultative examinations obtained by the Commissioner in connection with the current application "went south" and were replaced in toto by the opinions of the non-examining state agency consultants. The Commissioner argues that"[i]t is significant that not one of her treating physicians *found her to be disabled* [emphasis added] on account of any impairment." [Doc. 13, pg. 10]. It occurs to the undersigned that anytime a treating physician has stated in any report that a claimant is "disabled," the Commissioner argues vigorously that "disability" *vel non* is the exclusive province of the ALJ.

6

But once again, what we are faced with here are reports from examiners retained by the Commissioner whose opinions are not contradicted by anyone else who examined the plaintiff that gave the vocational expert testifying for the Commissioner the opinion that if those reports were correct, there were no jobs she could do.

Plaintiff argues, and not without some considerable justification, that this case should be remanded for an immediate award of benefits. However, under the facts of this case, the recommended course would be for a remand have both her physical and mental complaints examined once again, with hopefully definitive reports to give the Commissioner the information needed to finally and fairly adjudicate this claim. To this end, it is recommended that this case be remanded to the Commissioner for this to be done. Accordingly, it is recommended that the plaintiff's Motion for Judgment on the Pleadings [Doc. 11] be GRANTED insofar as it requests a remand, and that the Motion for Summary Judgment of the defendant Commissioner [Doc. 12] be DENIED.[1]

Respectfully submitted:

   s/ Dennis H. Inman
United States Magistrate Judge

---

[1] Any objections to this report and recommendation must be filed within ten (l0) days of its service or further appeal will be waived. Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947-950 (6th Cir. 198l); 28 U.S.C. § 636(b)(1)(B) and (C).